OPINION
The City of Middletown ("the City") appeals from a judgment of the Butler County Court of Common Pleas, which confirmed an arbitration award in favor of the International Association of Firefighters Local 336 ("the Union").
This dispute arises from the construction of a provision contained in a collective bargaining agreement ("the Agreement") entered into between the City and the Union. The term of the Agreement was from January 1, 1994 to December 31, 1996. As part of the Agreement, the City and the Union agreed on a two-tiered wage structure which decreased the starting salary for firefighters hired after January 1, 1994. The provision in dispute here, Article 45 F, recognized the savings that resulted from the lowering of compensation for firefighters hired after January 1, 1994, apportioned the savings between the City and the Union, and set forth the method of calculating the savings.
During the contract year 1994, three Division of Fire employees either retired or resigned and were replaced by three new firefighters. Fire Chief John Sauter calculated the resulting savings and presented it to Brenda Pergram, the City Treasurer, for review. After this review, the City and the Union compared calculations. No dispute arose between the parties with respect to the calculation, and the savings were paid in accordance with Article 45 F.
In 1995, four more Division of Fire employees either retired or resigned. The City hired four replacements for these employees, and in addition, hired four more firefighters, for a total of eight new employees. Initially, Chief Sauter calculated the savings for 1995 based on all eight new hires. While the savings calculation was being reviewed by Pergram, Chief Sauter shared it with the Union. After reviewing the calculation, Pergram informed Chief Sauter that he should have calculated the savings based on only the four new employees who replaced the employees who had either retired or resigned. After reviewing the entirety of Article 45 F, Chief Sauter agreed. The City then presented a savings calculation based on only the four replacements to the Union.
The Union disputed the City's savings calculation, arguing that all eight new employees should have been included in the calculation. The Union filed a grievance, and the matter proceeded to arbitration pursuant to the terms of the Agreement. The grievance procedure is set forth in Article 22 of the Agreement. Paragraph B of that article contains the pertinent arbitration provisions and provides as follows:
 Section 2 The arbitrator shall have no power to add to or subtract from or modify any of the terms of this Contract or addendum to this Contract * * *.
 Section 5 The Arbitrators decision shall be final and binding on the IAFF, on all Bargaining Unit Employees, and on the City.
An arbitration hearing was held on May 17, 1996. As framed by the arbitrator, the issue submitted for arbitration was "whether the scope of Article 45 F applies to savings resulting from new hires who are additions to the firefighting force, and who are not replacements of present employees who retire or resign." At the hearing, Chief Sauter and Donald Hardin, the President of the Union, testified. The parties also submitted various exhibits.
The arbitrator issued his opinion and award on June 22, 1996. In his opinion, the arbitrator rejected the City's argument that the second sentence of the introductory paragraph of Article 45 F limited the article's scope to only savings which resulted from new hires who replace employees who have either retired or resigned. According to the arbitrator, there were two difficulties with the City's position: (1) the first sentence of the introductory paragraph of Article 45 F recognizes that savings emanated essentially from the application of the two-tiered wage system, and this system could operate in a variety of transactions; and (2) the second paragraph of Article 45 F contains the phrase "total savings" and the third paragraph contains the phrase "all savings," which suggest that the scope of Article 45 F applies to savings that occur from the two-tiered wage system without exception.
The arbitrator found that the language of Article 45 F supported two reasonable interpretations with respect to the articles scope, and that, therefore, the language was ambiguous. Relying on parol evidence presented at the hearing to determine the parties' intent with respect to the article's scope, the arbitrator concluded that the scope of Article 45 F included the savings which resulted from the hiring of all new employees, and not just the savings which resulted from the hiring of new employees to replace employees who had either retired or resigned. Accordingly, the arbitrator ordered the City to distribute the savings which had resulted from hiring the four additional employees in 1995 pursuant to Article 45 F. The arbitrator stated that his decision was binding upon the parties for the term of the Agreement, i.e., through
The City filed a motion to vacate or modify the arbitration award pursuant to R.C. 2711.10(D) and 2711.11. The City did not dispute the arbitrator's award as it applied to the year 1995, but only as it would apply to the savings calculation to be made for 1996, the final year of the Agreement. In a decision rendered November 18, 1996, the trial court disagreed with the arbitrators conclusion that Article 45 F contemplated a savings irrespective of whether new employees were hired to replace employees who had either retired or resigned. The trial court opined that the language of Article 45 F was unambiguous and that the arbitrator had erred in concluding otherwise. Nonetheless, the court declined to vacate or modify the arbitrator's award. Citing Hillsboro v. Fraternal Order of Police (1990), 52 Ohio St.3d 174, the court concluded that it could not substitute its "interpretation" of the Agreement for the arbitrator's interpretation, and confirmed the award.
The City advances one assignment of error on appeal:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT, IN OVERRULING THE MOTION TO VACATE OR MODIFY THE ARBITRATION AWARD.
The City contends that the trial court erred in overruling its motion to vacate or modify the arbitration award. Specifically, the City argues that the arbitrator exceeded his authority in interpreting the unambiguous language of Article 45 F and that Hillsboro, supra, did not compel the trial court to confirm the arbitrator's award.
This Court is mindful of the public policy considerations underlying the arbitration process and the concomitant limited scope of judicial review of an arbitrator's award. See, e.g., Dayton v. Fraternal Order of Police (1991), 76 Ohio App.3d 591, 596-97; Huber Hts. v. Fraternal Order of Police (1991), 73 Ohio App.3d 68,73-74. R.C. 2711.10 sets forth the narrow circumstances under which a reviewing court is empowered to vacate such award. It provides, in pertinent part, that:
 [T]he court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if:
* * *
 (D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. (Emphasis added.)
So long as an arbitrator's award "`draws its essence from the collective bargaining agreement,'" and is not unlawful, arbitrary or capricious, an arbitrator has not exceeded his powers. Queen City Lodge No. 69, Fraternal Order of Police, Hamilton Cty., Ohio, Inc. v. Cincinnati (1992), 63 Ohio St.3d 403,406, quoting United Steelworkers of Am. v. Enterprise Wheel Car Corp. (1960), 363 U.S. 593, 597. An award departs from the essence of a collective bargaining agreement, and consequently, an arbitrator exceeds his power, where the award conflicts with the express terms of the agreement, lacks rational support, or cannot be rationally derived from the terms of the agreement. Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Emp. Assn., Local 11, AFSCME, AFL-CIO (1991), 59 Ohio St.3d 177, syllabus ("Ohio Office").
As stated supra, the trial court here concluded that Article 45 F was unambiguous but declined to vacate the arbitrator's award based on the Supreme Court of Ohio's decision in Hillsboro, supra, wherein the court held at the syllabus that:
 When a provision in a collective bargaining agreement is subject to more than one reasonable interpretation and the parties to the contract have agreed to submit their contract interpretation disputes to final and binding arbitration, the arbitrator's interpretation of the contract, and not the interpretation of a reviewing court, governs the rights of the parties thereto. (citation omitted.)
At issue in Hillsboro was whether a dispatcher for the Hillsboro Police Department was entitled to overtime pay for work performed during a certain pay period. The arbitrator interpreted the provision involving overtime pay in such a way that the dispatcher was entitled to overtime pay. The city filed a motion to vacate the arbitrator's award, which the trial court granted. The trial court found that the overtime provision was unambiguous and that the arbitrator had exceeded her authority by interpreting it. The court of appeals affirmed the trial court's decision.
The supreme court, however, concluded that the provision was subject to more than one reasonable interpretation, and thus, ambiguous. Hillsboro, supra, at 177. The court also concluded that the arbitrator's award drew its essence from the parties' agreement, and that it was not unlawful, arbitrary or capricious. The court opined that, under such circumstances, the arbitrator's interpretation must prevail over a reviewing court's interpretation because the arbitrator's interpretation of the contract was what the parties had bargained for in agreeing to submit their disputes to final and binding arbitration. Id. at 177-78. Accordingly, the supreme court found that the trial court and a majority of the court of appeals had erred in substituting their interpretation of the overtime provision for that of the arbitrator and in vacating the award. Id. at 177.
Since Hillsboro, the supreme court has made it clear that while an arbitrator "`may construe ambiguous contract language, he is without authority to disregard or modify plain and unambiguous provisions.'" Ohio Office, supra, at 180, quoting Detroit Coil Co. v. Internatl. Assn. of Machinists Aerospace Workers, Lodge No. 82 (C.A. 6, 1979), 594 F.2d 575, 579, certiorari denied, (1979), 444 U.S. 840. In Ohio Office, a hospital aide was discharged for abusing a patient. The aide filed a grievance and the matter proceeded to arbitration. The arbitrator found that the aide had committed the abuse of the patient, but reinstated the aide for lack of just-cause dismissal. The trial court vacated the arbitrator's decision, holding that once the arbitrator found that abuse had occurred, the arbitrator was without authority under the collective bargaining agreement to modify the termination. The court of appeals agreed that the arbitrator had exceeded his authority under the collective bargaining agreement by ignoring the agreement's plain meaning and affirmed the trial court's decision.
The supreme court found that the arbitrator had grafted a just-cause requirement onto the clause governing termination for abuse in violation of the clear and unambiguous terms expressed in the parties' agreement. The court concluded that the arbitrator's award failed to draw its essence from the agreement because the award conflicted with the express terms of the agreement and imposed additional requirements for termination not expressly provided for in the agreement. Ohio Office, supra, at 183. The arbitrator exceeded his authority by creating, in effect, a contract of his own, rather than applying the contract agreed to by the parties. Id. See, also, Am. Fedn. of State, Cty. Mun. Emp., Ohio Council 8, Local 3536 v. Clermont Cty. Dept. of Human Serv. (1996), 112 Ohio App.3d 401; Elgin Local School Dist. Bd. of Edn. v. Chapter 720, Ohio Assn. of Pub. School Emp., AFSCME Local 4/AFL-CIO (1995),102 Ohio App.3d 204, discretionary appeal not allowed, (1995),73 Ohio St.3d 1428.
Based on the foregoing, it seems apparent that where the language of a collective bargaining agreement is unclear and the parties have agreed to submit their disputes concerning contract interpretation to final and binding arbitration, reviewing courts must defer to the arbitrator's interpretation of the language because the parties have bargained for that interpretation. Hillsboro, supra, at 177. Where the language of the agreement is plain and unambiguous, however, the parties have not bargained for a third party's interpretation of the language. As such, an arbitrator exceeds his authority in interpreting such language and in fashioning an award which conflicts with the express terms of the agreement, or is without rational support, or cannot be rationally derived from the terms of the agreement. Ohio Office, supra, at 183.
Consequently, the issue before us is whether the language of Article 45 F, as a matter of law, is ambiguous. If it is ambiguous, then the trial court properly deferred to the arbitrator's interpretation of the provision when it declined to vacate the award. Hillsboro, supra. If it is unambiguous, as the trial court concluded, then the arbitrator exceeded his authority by interpreting unambiguous language, and the trial court erred in not vacating the arbitrators award. Ohio Office, supra.
Generally, courts presume that the intent of the parties to a contract resides in the language they choose to employ in the agreement. Shifrin v. Forest City Ent., Inc. (1992), 64 Ohio St.3d 635,638, citing Kelly v. Med. Life Ins. Co. (1987),31 Ohio St.3d 130, paragraph one of the syllabus. The Supreme Court of Ohio has set forth a test for determining whether contract terms are ambiguous:
Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument.
Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, paragraph two of the syllabus. If no ambiguity appears on the face of the instrument, parol evidence cannot be considered in an effort to demonstrate such an ambiguity. Shifrin, supra, at id. In this context, we have observed that "[w]hen the words of an agreement are plain and clear, conveying a distinct idea, there is no occasion to obtain an outside interpretation of what they convey. But, when plausible contentions can be made for conflicting interpretations, the agreement becomes ambiguous." Dayton v. Fraternal Order of Police, supra, at 597.
Article 45 F states in its entirety:
 The parties recognize that the two-tiered wage structure in paragraph A of this Article may result in a savings to the City in the case of retirement or resignation of present employees of the Division of Fire. In the case of such retirement or resignation, the savings to the City shall be divided with employees as follows: from January 1, 1994 through December 31, 1995, the employees shall receive eighty-five percent (85%) of the total savings, minus all pension contributions required to be made by the employer and the employees, and the City shall retain fifteen percent (15%) of the total savings; effective January 1, 1996 and through December 31, 1996, the employees shall receive ninety percent (90%) of the total savings, minus all pension contributions required to be made by the employer and the employees, and City shall retain ten percent (10%) of the total savings.
 The total savings shall be calculated as of December 31 of each year by the City, and shall be paid to the employees on or before January 31 of the following year in accordance with the following formula: Total savings [divided by] total years of service in the Division of Fire of all members with ten or more years of service ($dollars per year) x members['] years of service (only member with ten or more years in Division of Fire).
 For purposes of calculating the savings, the parties agree that in the entry level Step A, a firefighter hired after January 1, 1994 and prior to January 1, 1995 will save the City eleven thousand three hundred and fifty dollars ($11,350.00) annually, in Step B will save the City nine thousand dollars ($9,000.00) annually, and in Step C will save the City six thousand six hundred and fifty dollars ($6,650.00). For purposes of calculating the savings, the parties agree that in the entry level Step A, a firefighter hired after January 1, 1995 and prior to January 1, 1996 will save the City eleven thousand seven hundred dollars ($11,700.00) annually, in Step B will save the City nine thousand two hundred and fifty dollars ($9250.00) annually, and in Step C will save the City six thousand and eight hundred and fifty dollars ($6,850.00). For purposes of calculating the savings, the parties agree that in the entry level Step A, a firefighter hired after January 1, 1996 and prior to January 1, 1997 will save the City twelve thousand dollars ($12,000.00) annually, in Step B will save the City nine thousand five hundred dollars ($9,500.00) annually, and in Step C will save the City seven thousand and fifty dollars ($7,050.00). All savings will be prorated from the date of hire of the new employee, unless such hiring does not occur within ninety (90) days of the resignation or retirement, in which case the new employee (for savings purposes only) will be deemed hired sixty (60) days after the resignation or retirement. Nothing here limits the right of the City to determine not to replace an employee who resigns or retires, and no savings shall be determined in the event of a retirement or resignation if the City determines not to replace such employee. (Emphasis added.)
In our judgment, giving the terms of Article 45 F their ordinary meaning, the article indicates unambiguously the intent of the parties to recognize savings as a result of the two-tiered wage structure only in cases where new firefighters are hired to replace firefighters who have either retired or resigned. The first sentence of the introductory paragraph limits the recognition of a savings from the two-tiered wage structure to "in the case of retirement or resignation of present employees of the Division of Fire." This limitation is reiterated in the next sentence, which explains how, "[i]n the case of such retirement or resignation," the savings is to be apportioned between the City and the Union. In dividing the savings, the sentence states what percentage of the "total savings, minus all pension contributions" the employees will receive and the City will retain. As the term "total savings" is used in the same sentence as savings "in the case of such retirement or resignation," the only reasonable interpretation is that "total savings" is referring to the savings resulting from all the cases of retirement or resignation in the stated year.
The second paragraph states when the "total savings" is be to calculated and paid by the City. As no other type of savings has been mentioned, this "total savings" must be the same "total savings" as that referred to in the first paragraph. Hence, "total savings" as used in this paragraph must also refer to the savings resulting from all the cases of retirement or resignation in the stated year.
The third and final paragraph set forth the parties agreement with respect to the amount of money a new firefighter will save the City. The paragraph begins with the phrase "[f]or the purpose of calculating the savings." The word "savings" can only refer back to the "savings" in the first and second sentence of the introductory paragraph, and thus the "savings" is in "the case of retirement or resignation." We agree with the City that the last two sentences of the final paragraph further support the conclusion that the parties only intended to recognize a savings in cases where new firefighters were hired to replace firefighters who had either retired or resigned. The penultimate sentence ties the savings calculation to the date of hire of the new employee, unless such hiring does not occur within a certain time of the resignation or retirement, in which case the new employee, for savings purposes only, is deemed hired 60 days after the resignation or retirement. The last sentence permits the City to choose not to replace an employee who retires or resigns and expressly states that "no savings shall be determined in the event of a retirement or resignation if the City determines not to replace such employee."
Moreover, no other meaning is clearly evidenced from the face or overall contents of the parties' Agreement. Article 45 F is the only provision in the Agreement which addresses the savings that results from the two-tiered wage structure. Hence, we agree with the trial court that the language of Article 45 F is plain and unambiguous. Based on this language, we can only conclude that the savings in Article 45 F is limited to the savings that would result from the hiring of new employees who replace employees who have either retired or resigned, and that the parties did not intend for the savings to include the savings that would result from the hiring of all new employees.
The arbitrator interpreted the language of Article 45 F to include the savings that would result from the hiring of all new employees, regardless of whether they were hired to replace employees who had retired or resigned. Because we have concluded that the language of Article 45 F is unambiguous, the arbitrator exceeded his authority in interpreting the language and in fashioning an award which does not draw its essence from the parties' Agreement. Accordingly, the assignment of error is sustained.
Having sustained the City's sole assignment of error, the judgment of the trial court will be reversed and the case will be remanded for the limited purpose of the trial court entering judgment vacating the arbitrator's award as it applies to the savings calculation for 1996, the final year of the parties Agreement.
As a final matter, the Union has filed a motion for Rule 11 sanctions against the City, arguing that the City's appeal to the Common Pleas Court and to this Court was frivolous and pursued for the purpose of delaying the payment of funds owed to the Union. The Union requests the sum of $10,000 plus reasonable attorney fees. Because we have found the City's appeal to be meritorious, the Union's motion for Rule 11 sanctions will be overruled.
GRADY, J., concurs.